897 A.2d 1168

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Donald Robert CONKLIN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 17, 2005.

Decided May 24, 2006.

142

Scott B. Bennett, Esq., Jeffrey J. Wander, Esq., Honesdale, for Donald Robert Conklin.

Patrick Leland Robinson, Esq., Michael P. Lehutsky, Esq., Honesdale, for Commonwealth of Pennsylvania.

John Craig Manning, Esq., Harrisburg, for amicus curiae Sexual Offender Assessment Board.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and BAER, JJ.

## *OPINION*

Justice CASTILLE.

Recently, in *Commonwealth v. Dengler*, 890 A.2d 372 (2005), this Court held that expert testimony proffered in a Megan's Law II[1] hearing to determine if a defendant is a sexually violent predator ("SVP") is not subject to the Pennsylvania test for admissibility of novel scientific testimony derived from *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). In the case *sub judice*, this Court granted review to consider a separate question concerning the contours of an SVP hearing under Megan's Law II: "Whether the Commonwealth, as part of its burden of proof in a proceeding to determine whether an individual is a sexually violent predator, must present evidence, in the form of a clinical diagnosis by a licensed psychologist or psychiatrist, that the individual suffers from a personality disorder or mental abnormality that makes the person likely to engage in predatory sexually violent offenses?" *Commonwealth v. Conklin*, 581 Pa. 622, 867 A.2d 1261 (2005) (per curiam). The lower courts found that the licensed clinical social worker who testified in the SVP hearing in this case, though not a licensed psychologist or psychiatrist, nevertheless was qualified to offer opinion testimony on the question of whether appellant was an SVP because the clinical social worker qualified as a criminal justice expert and the statute

1. Act of May 10, 2000, P.L. 74, No. 18 (as amended), 42 Pa.C.S. § 9791 *et seq.*

requires no more. We agree with the lower courts' interpretation of the statutory requirement, and we therefore affirm.

Appellant and his ex-wife, who are the parents of the minor victim, separated in January of 2001 and divorced in September of 2001. In March of 2002, the victim, who was then nine years old, informed her mother that appellant had been sexually abusing her for approximately three years. Appellant subsequently was arrested and charged with various sexual offenses. At appellant's trial, the child testified that the sexual assaults began when she was six years old and included repeated acts of rape and involuntary deviate sexual intercourse.

On March 19, 2003, following a jury trial before the Honorable Robert J. Conway, appellant was found guilty of rape,[2] involuntary deviate sexual intercourse,[3] aggravated indecent assault,[4] incest,[5] indecent assault,[6] indecent exposure[7] and corruption of a minor.[8] Appellant's convictions qualified him as subject to the registration and notification provisions of Megan's Law II, and also required a determination of whether he was an SVP, which would expose him to additional measures. The Act defines a "sexually violent predator," in relevant part, as "[a] person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792.[9]

**2.** 18 Pa.C.S. § 3121.

**3.** 18 Pa.C.S. § 3123.

**4.** 18 Pa.C.S. § 3125.

**5.** 18 Pa.C.S. § 4302.

**6.** 18 Pa.C.S. § 3126.

**7.** 18 Pa.C.S. § 3127.

**8.** 18 Pa.C.S. § 6301.

**9.** This Court has described the operation of Megan's Law II in some detail in both *Dengler, see* 890 A.2d at 374–75 & nn. 2 & 3 and *Commonwealth v. Williams,* 832 A.2d 962, 965–968 & nn. 6, 8–12

In accordance with the Act, after receiving the verdict Judge Conway directed the State Sexual Offender Assessment Board to perform an SVP assessment of appellant. David Humphreys, a licensed clinical social worker and member of the Board, conducted the assessment and prepared a written report in which he concluded, to a reasonable degree of professional certainty, that appellant met the statutory criteria for classification as an SVP. Within the report, Humphreys described the records he had consulted as well as his interview with appellant, and then went on to discuss and apply the statutory criteria relevant to assessing SVP status, which included an evaluation of "[f]actors related to mental illness, mental disability or mental abnormality." Humphreys opined that appellant's behavior and his presentation during his interview indicated that he had a "form of pedophilia, which has been limited to incest," as well as an anti-social personality disorder, both of which were exacerbated by alcoholism. Humphreys described the reasons why his "diagnostic impressions" in this regard led him to conclude that appellant "does have a mental abnormality which appears to be both a congenital and/or an acquired condition of [appellant] that affects his emotional and volitional capacity ... in a manner that predisposes [appellant] to the commission of criminal sexual acts to the degree that makes [appellant] a menace to the health and safety of other persons." Offender Evaluation, 11–12. Humphreys also explained why he believed appellant's behavior was predatory.

On August 12, 2003, the trial court conducted an SVP hearing, at which the Commonwealth called Humphreys to testify as an expert. With respect to his qualifications, Humphreys testified that he had Bachelor's degrees in both psychology and sociology, as well as a Master's degree in social work; that he had been a member of the Sexual Offender Assessment Board since 1997; that he had seventeen years of experience as a social worker, all of which involved working with sex offenders; and that he was the director of the sex

(2003). For purposes of deciding the narrow question accepted for review here, we need not repeat that description.

offender program at a local mental health agency, Tri–County Human Services. With respect to the criminal justice system, Humphreys testified that he had provided numerous evaluations for county agencies, as well as the county, state and federal probation and parole systems, and that he had testified as an expert on SVP classification in various courts in northeastern Pennsylvania. In addition to his work at Tri–County Human Services, where he worked with several hundred offenders a year, Humphreys testified that he conducted 12–20 SVP assessments per year; in roughly half of those cases, he had determined that the offender met the SVP classification criteria. N.T. 8/12/03, 2–6.

On cross-examination, appellant elicited that Humphrey was neither trained nor licensed as a psychiatrist or a psychologist and, as a result, he could not offer opinions to a reasonable degree of certainty in those fields. However, Humphreys noted that he was qualified and licensed, by his training and experience, to offer opinions and "diagnostic impressions" "to a reasonable degree of professional certainty based upon my experience, knowledge, background and training." Appellant then objected that Humphreys "not be considered qualified to issue a clinical diagnosis with regard to mental illness, mental disability or mental abnormality for the purpose of this Megan's Law hearing." The court overruled the objection and Humphreys testified consistently with his report. *Id.* at 6–11, 20–23.

After hearing Humphreys' testimony and further argument from the parties, the trial court determined that appellant was an SVP. With respect to Humphreys' qualifications to testify on that question, the court noted that, "we [are] talking about a person who [has] been in that field for 17 years and has been appointed by the state to do exactly what he's done here today." The court added that, "[w]e also have the conviction, which is a proven fact before us. We also have a period of over two years of having a young child, his daughter sexually molested in various ways." *Id.* at 38. The court then sentenced appellant to a term of imprisonment for ten to twenty years and a fine of $2,000.

Appellant appealed to the Superior Court arguing, *inter alia*, that the Commonwealth had failed to meet its burden of establishing by clear and convincing evidence that appellant is an SVP because Humphreys was not qualified to testify that appellant had a mental abnormality.[10] The Superior Court affirmed in an unpublished decision. The panel majority noted that Megan's Law II specifically lists "psychiatrists, psychologists and criminal justice experts each of whom is an expert in the field of the behavior and treatment of sexual offenders" as individuals who could serve on the Board—and thus conduct SVP assessments and testify on the question of SVP classification. *See* 42 Pa.C.S. § 9799.3. Because it was undisputed that Humphreys was a qualified criminal justice expert, the panel majority concluded that Humphreys could perform and testify to SVP assessments, including assessments regarding mental abnormality or personality disorder.

President Judge Joseph A. Del Sole dissented, opining that Humphreys was not qualified to testify as an expert on SVP classification because, in the dissent's view, such an expert must make a "diagnosis" of mental abnormality or personality disorder, which falls outside the expertise of a person who is not a licensed psychiatrist or psychologist. The dissent further argued that, while Humphreys was qualified as a criminal justice expert to be a member of the Board, the statutory scheme "does not diminish or reduce the criteria for expert testimony by automatically qualifying a non-licensed psychologist or psychiatrist as an expert who can give a differential diagnosis on mental abnormality or personality disorder for purposes of the statute." Dissenting Memorandum at 2. Because the dissent construed Megan's Law II as requiring expert diagnostic testimony and no such valid expert testimo-

10. Appellant raised three other issues: whether the trial court erred in (1) permitting the Children's Advocacy Center's medical director to testify regarding the child's specific allegations of sexual conduct where the statements were not necessary for treatment, (2) denying appellant the opportunity to present testimony regarding the child's reputation for truthfulness, and (3) fining appellant without regard to his ability to pay or the effect the fines would have on his ability to pay restitution. None of these issues were included in this Court's limited grant of review, and thus we do not pass upon them.

ny was presented in the case *sub judice,* the dissent concluded that the Commonwealth failed to establish that appellant was an SVP.

On this appeal, appellant begins by noting that Megan's Law II defines "mental abnormality" as: "A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S. 9792. The statute does not define "personality disorder." Appellant argues that the triggering terms "mental abnormality" and "personality disorder" must be deemed to be psychological terms of art, thus requiring the testimony of a licensed psychiatrist or psychologist. Absent such qualified testimony, which is essential to any finding that an offender is an SVP, appellant argues, the Commonwealth fails to carry its burden of proof at an SVP hearing.

In support of his argument that only a licensed psychiatrist or psychologist may offer expert opinion testimony concerning mental abnormality or personality disorder, appellant cites to the Professional Psychologists Practice Act, 63 P.S. 1201–1218, noting that the Act provides that only a licensed individual may perform psychological assessments or render expert psychological testimony. *Id.* 1203. Appellant argues that as a matter of Pennsylvania law a witness who is not, at a minimum, licensed to practice psychology cannot render an expert opinion on such issues. As a result, appellant asserts that Humphreys was not properly qualified as an expert at the SVP hearing and that his testimony could not satisfy the Commonwealth's burden concerning the mental abnormality or personality disorder which is essential to concluding that an offender is an SVP. Appellant therefore requests that this Court vacate the SVP finding.

The Commonwealth counters that Megan's Law II expressly authorizes a criminal justice expert like Humphreys to conduct SVP assessments and to testify in court as to those assessments. The Commonwealth notes that appellant con-

cedes that Humphreys is qualified to serve on the Board as a criminal justice expert and that Board members are specifically charged with the responsibility of conducting SVP assessments, which includes the inquiry into mental abnormality or personality disorder. Parenthetically, the Commonwealth also notes that the common law evidentiary standard for assessing the qualifications of expert witnesses "is a liberal one:" *i.e.* so long as the witness has "any reasonable pretension to specialized knowledge of the subject under investigation"—knowledge which may be gleaned from training and experience as well as from formal education—he may be permitted to testify in the discretion of the trial court. Brief of Appellee, 4, quoting *Commonwealth v. Malseed,* 847 A.2d 112, 114 (Pa.Super.2004), *appeal denied,* 580 Pa. 712, 862 A.2d 1254 (2004).[11] Humphreys' education, training and experience, the Commonwealth argues, clearly qualified him to offer expert opinion testimony concerning whether appellant met the statutory criteria for classification as an SVP.

The Commonwealth also argues that the question of the admissibility of Humphreys' testimony on SVP status is governed by the statute; thus, Humphreys must be deemed qualified to offer the disputed testimony here, unless there was something in Megan's Law II itself that disqualified him. The Commonwealth contends that appellant misconstrues the statute as including such a disqualifying factor when he claims that it requires a "clinical diagnosis" or "differential diagnosis" by a licensed psychologist or psychiatrist regarding a mental abnormality that would make a person likely to engage in predatory sexual offenses. The Commonwealth notes that the SVP assessment contemplated under Megan's Law II does not require a clinical or differential diagnosis in the sense that

11. *Malseed's* characterization of the governing law in this area is in accord with this Court's controlling authority. *See, e.g., Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1267 (2002). *See also* Pa.R.E. 702 ("Testimony by experts") ("If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."); *Dengler,* 890 A.2d at 380.

such are typically conducted by psychiatrists and psychologists. Nor does the statute provide that licensed psychologists or psychiatrists are required to conduct the SVP assessments contemplated by Megan's Law II. To the contrary, the Commonwealth notes, such terms as SVP and mental abnormality as employed in Megan's Law II are not accepted medical or psychological terms; therefore, by definition, testimony from a licensed psychiatrist or psychologist was not contemplated in every evaluation. In addition, nothing in Megan's Law II requires that opinions respecting SVP classification be stated within a reasonable degree of medical certainty. In short, the Commonwealth contends, nothing in the statute suggests that a licensed psychiatrist or psychologist is particularly qualified, much less exclusively qualified, to testify to the statutory question of SVP classification, including the question of mental abnormality relating to the likelihood of sex offender recidivism. The Commonwealth summarizes its position on this point as follows: "Humphreys is in the business of doing assessments to determine whether a sexual offender is likely to reoffend. Humphreys is not in the business of prescribing medicine or performing psychoanalysis and nothing contained in Megan's Law [II] requires him to be in such business." Brief of Appellee, 8.

Finally, the Commonwealth disputes appellant's reliance upon the Professional Psychologists Practice Act. The Commonwealth notes that that Act itself recognizes that certain other professions may engage in work of a "psychological nature," and social workers are among those professionals specifically exempted. See 63 P.S. 1203(3) ("Nothing in this act shall be construed to prevent qualified members of other professions, including, but not limited to social workers from doing work of a psychological nature consistent with the training and code of ethics of their respective professions."). The Commonwealth also notes that later on in Title 63 (which addresses "Professions and Occupations"), the General Assembly specifically addressed social workers in "the Social Workers' Practice Act." See 63 Pa.C.S.1901–1922. Section 1907 of this Act sets forth the requirements for licensure as a social

worker. The Commonwealth then argues that Section 1903 defines the "practice of clinical social work" in such a way as to make clear that it may include assessment of mental disorders:

Holding oneself out to the public by any title or description of services incorporating the term "licensed clinical social worker" or using any words or symbols indicating or tending to indicate that one is a licensed clinical social worker and under such description offering to render or rendering a service in which a special knowledge of social resources, human personality and capabilities and therapeutic techniques is directed at helping people to achieve adequate and productive personal, interpersonal and social adjustments in their individual lives, in their families and in their community. **The term includes person and environment perspectives, systems theory and cognitive/behavioral theory, to [sic] the assessment and treatment of psychosocial disability and impairment, including mental and emotional disorders, developmental disabilities and substance abuse.** The term includes the application of social work methods and theory. The term includes the practice of social work plus additional concentrated training and study as defined by the board by regulation.

63 P.S. § 1903 (emphasis added).

In addition to the parties' briefs, this Court has the benefit of an Amicus Curiae brief the Board has filed in support of the Commonwealth. The Board argues that it is important to recognize a distinction between what it terms a "forensic assessment," which is what occurs in an SVP evaluation, and a "therapeutic assessment," which is what mental health professionals do when treating a person with a mental disorder. The Board argues that neither Megan's Law II nor the generally accepted practices of the various mental health professions direct that an expert must make a "clinical diagnosis" of personality disorder or mental illness in order to aid a court in the narrow task of determining statutory SVP status. The SVP evaluation does not seek to "diagnose" a syndrome or set of symptoms, for treatment purposes, but rather the

evaluation seeks to answer the statutory question of the offender's likelihood of engaging in predatory sexual violence. The Board further notes that the Act makes clear that the expertise at issue is "in the field of the behavior and treatment of sexual offenders;" not all psychiatrists or psychologists have such specific expertise. In making the assessment contemplated by the statute, the Board argues, the Board member applies non-clinical, statutory terms such as "mental abnormality." In the Board's view, there is nothing in the Act or in the "generally accepted practices of the mental health profession" to preclude a Board member from conducting a non-clinical, non-diagnostic "forensic assessment" of an offender's "psychological attributes" in order to determine whether he is an SVP. The Board further argues that the type of forensic assessment it makes "is not novel or unprecedented, but rather is well supported by experts in the field of sex offender evaluation and treatment." Finally, the Board argues in the alternative that, even if the evaluator's testimony is deemed to comprise a clinical diagnosis rather than a forensic assessment, a licensed clinical social worker such as Humphreys is qualified to render such a diagnosis. In forwarding this alternative argument, the Board cites to decisions from the United States Supreme Court and several of our sister states which recognize that licensed clinical social workers may testify to a diagnosis of a mental disorder; and the Board also notes that thirty-three states and the District of Columbia have statutes defining social work or clinical social work as including the diagnosis or evaluation of mental disorders.

As a general matter, the question of whether a witness is qualified to testify as an expert is a matter resting in the discretion of the trial judge. *E.g. Commonwealth v. Marinelli*, 570 Pa. 622, 810 A.2d 1257, 1267 (2002). In this instance, however, the competence and relevance of the testimony primarily depends upon the proper interpretation of a statute. To the extent our inquiry focuses upon the meaning and application of the statute, this Court's review is plenary

and non-deferential. *E.g. MCI Worldcom, Inc. v. Pennsylvania Public Utility Comm'n,* 577 Pa. 294, 844 A.2d 1239 (2004); *Mosaica Academy Charter School v. Commonwealth, Department of Education,* 572 Pa. 191, 813 A.2d 813 (2002).[12]

 The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). The statute's plain language generally provides the best indication of legislative intent. *See, e.g., Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). We will resort to other considerations to divine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S.1921(b). *See also Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (*citing O'Rourke v. Commonwealth,*

12. In his Statement of the Scope and Standard of Review, appellant states that the issue presented concerns the sufficiency of the evidence to prove he should be classified as an SVP. In response, the Commonwealth notes that appellant's actual argument is confined to a claim that Humphreys was unqualified to render the expert opinion he gave, an issue involving the admissibility of evidence. The issue, which was specifically framed in this Court's order granting review, implicates the admissibility of the proffered testimony under the statute, and not sufficiency. The distinction is not academic; a successful sufficiency challenge can lead to an outright grant of relief (in this case, a reversal of the SVP designation), while a successful evidentiary challenge presumably would result in a remand for another hearing at which the challenged evidence would not be admissible. Moreover, casting the issue as sufficiency review is a *non sequitir:* in conducting a sufficiency review, this Court would have to accept the record of the case as actually litigated, which would include Humphreys' evidence, and not as diminished by evidence deemed, after the fact, to have been wrongly admitted. *See Commonwealth v. Hall,* 574 Pa. 233, 830 A.2d 537, 542 n. 2 (2003); *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983).

*Dept. of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *Ramich v. Worker's Compensation Appeal Bd. (Schatz Electric, Inc.),* 564 Pa. 656, 770 A.2d 318, 322 (2001).

This appeal implicates the interplay of two sections of Megan's Law II, the provision dealing with SVP assessments, 42 Pa.C.S. § 9795.4, and the provision describing the Board. *Id.* § 9799.3. Section 9795.4(b) provides that, after the sentencing court refers a convicted offender for an assessment, "a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator." That assessment is to be conducted according to standards for evaluation which the Board is to establish, and is to consider factors listed in Section 9795.4(b).[13] Section 9799.3(a) then outlines what professionals are authorized to be members of the Board:

(a) **Composition.**—The State Sexual Offenders Assessment Board shall be composed of psychiatrists, psychologists and

---

13. The factors listed in Section 9795.4(b) are:
 (1) Facts of the current offense, including:
 (i) Whether the offense involved multiple victims.
 (ii) Whether the individual exceeded the means necessary to achieve the offense.
 (iii) The nature of the sexual contact with the victim.
 (iv) Relationship of the individual to the victim.
 (v) Age of the victim.
 (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
 (vii) The mental capacity of the victim.
 (2) Prior offense history, including:
 (i) The individual's prior criminal record.
 (ii) Whether the individual completed any prior sentences.
 (iii) Whether the individual participated in available programs for sexual offenders.
 (3) Characteristics of the individual, including:
 (i) Age of the individual.
 (ii) Use of illegal drugs by the individual.
 (iii) Any mental illness, mental disability or mental abnormality.
 (iv) Behavioral characteristics that contribute to the individual's conduct.
 (4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.
 *Id.* § 9795.4(b).

criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders. *Id.*

The term "criminal justice expert" is not further defined in Megan's Law II, but that fact is of no moment for purposes of this appeal, as there is no dispute that Humphreys qualified as a criminal justice expert within the meaning of Section 9799.3.[14] Notably, the legislation does not suggest that the different types of professionals approved for Board membership are to execute different functions peculiar to their professions. In other words, the statute does not say, or even suggest, that SVP assessments may only be performed by those on the Board who are psychiatrists or psychologists (with expertise in the behavior and treatment of sexual offenders). Nor does the statute suggest that opinions concerning an offenders' mental abnormality or personality disorder may only be rendered by a psychiatrist or psychologist. To the contrary, it appears from the plain language of the statute that the sole purpose of the Board is to provide SVP assessments, and it is equally apparent that the General Assembly contemplated that all members of the Board are to provide such assessments—whether the member be a psychiatrist, a psychologist, or a criminal justice expert. Accordingly, there is no question in our mind that the plain language of Megan's Law II authorizes a criminal justice expert such as Humphreys, who is an expert in the behavior and treatment of sexual offenders, to conduct the statutory SVP assessment, an assessment which encompasses an evaluation of whether the offender has "a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792. In short, there is nothing in the statute to support appellant's argument that

14. In its amicus brief, the Board notes that it has administratively defined a criminal justice expert as an individual with a Master's degree or higher in social work, counseling, criminology, human sexuality or criminal justice. In addition, Board members must have a minimum of 2000 hours of experience with sex offenders through direct service, education, research or supervision. Brief of Amicus at 9 & Appendix A. Humphreys apparently met these criteria.

only a licensed psychiatrist or psychologist may testify to an expert opinion concerning those aspects of SVP status involving the offender's mental abnormality or personality disorder.

Appellant argues, however, that there are considerations external to the plain language and structure of Megan's Law II that operate to prevent expert mental health-related testimony from Board member assessors who are not licensed psychiatrists or psychologists. Thus, appellant argues that the Professional Psychology Practice Act must be construed as barring a licensed clinical social worker such as Humphreys from offering an expert opinion on a sexual offender's mental state. But, the plain language of this Act makes clear that it imposes no such absolute bar, at least in the case of licensed social workers. Section 1203 provides that: "It shall be unlawful for any person to engage in the practice of psychology or to offer or attempt to do so or to hold himself out to the public by any title or description of services incorporating the words 'psychological,' 'psychologist' or 'psychology' unless he shall first have obtained a license pursuant to this act." 63 P.S. 1203.[15] As the Commonwealth has noted, however, the very same Section of that Act no less clearly recognizes that it is not intended to bar qualified members of other professions, including social workers, from engaging in work of a psychological nature which is consistent with the practice of those professions: "Nothing in this act shall be construed to prevent qualified members of other recognized professions, including, but not limited to, clergy, drug and alcohol abuse counselors, mental health counselors, **social workers,** marriage counselors, family counselors, crisis intervention counselors, pastoral counselors, rehabilitation counselors and psychoanalysts, from doing work of a psychological nature consistent with the training and the code of ethics of their respective professions or to prevent volunteers from providing services in crisis." 63 P.S. § 1203(3) (emphasis added).

**15.** For purposes of considering appellant's argument, we will assume that the evaluation and expert opinion rendered by Humphreys implicated the practice of psychology. *See* 63 P.S. § 1202 (defining practice of psychology).

Moreover, the provisions of Title 63 which deal specifically with social workers (the "Social Workers' Practice Act," 63 P.S. §§ 1901–1922) corroborate the social worker exception carved out in the Professional Psychology Practice Act. Thus, Section 1903, which sets forth the parameters of the practice of clinical social work, provides that the practice of clinical social work includes: "person and environment perspectives, systems theory and cognitive/behavioral theory, to the assessment and treatment of psychosocial disability and impairment, including mental and emotional disorders, developmental disabilities and substance abuse." The plain language of this statute thus recognizes that clinical social workers have some expertise in the assessment of mental disorders.[16]

In short, there is no tension between what Megan's Law II plainly authorizes and the licensing provisions in the Professional Psychology Practice Act. Other recognized professions, including social workers, are authorized to engage in work of a psychological nature that falls within their area of training. In this case, Humphreys testified that he has Bachelor's degrees in psychology and sociology and a Master's degree in social work. At the time of appellant's Megan's Law II hearing, Humphreys was a licensed clinical social worker with seventeen years of practical experience working with sex offenders, and the director of the sex offender program at Tri–County Human Services. Humphreys had provided expert testimony regarding sexual offender issues in many different courts, and testified at SVP hearings in Lackawanna, Susquehanna, Luzerne, Bradford and Wyoming Counties. He worked with several hundred sex offenders annually, performing approximately 12–20 SVP assessments per year. His training and experience are such that he clearly fits within the

16. We recognize that Megan's Law II speaks in terms of "criminal justice experts" who are "expert in the field of the behavior and treatment of sexual offenders," and not in terms of licensed social workers. Notably, however, the exceptions specifically set forth in the Professional Psychology Practice Act are illustrative and not exhaustive (i.e., "including but not limited to ..."). Both statutes, then, are written in flexible terms; a criminal justice expert may be, but need not necessarily be, a licensed social worker.

exception specifically recognized in Section 1203(3) of the Professional Psychology Practice Act.

Finally, we note that the underlying predicate of appellant's argument—*i.e.,* that the diagnostic standards which govern mental health professionals in other contexts exist as a non-textual restraint upon what is authorized by the legislative scheme adopted in Megan's Law II—echoes the *Frye* challenge which was forwarded in the *Dengler* case, and it must fail for similar reasons. The *Dengler* Court noted that the argument that expert testimony on SVP status "does not square with prevailing standards and methodology in the psychological and psychiatric diagnostic communities" "misses the mark" because "[t]he statute does not require proof of a standard of diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm." The *Dengler* Court stressed that, "[i]n seeking to protect society against certain sexual offenders, the General Assembly was not obliged to adopt a certain diagnostic construct, and it is the construct that was actually adopted which must control this Court's analysis of the relevance and admissibility of evidence offered to prove the statutory standard." *Dengler,* 890 A.2d at 383. We further explained our reasoning as follows:

> [T]he "science" here (and the SVP designation consequences it triggers) is responsive to, indeed it is a direct byproduct of, a specific legislatively-adopted scheme which sets forth the relevance and contours of the challenged evidence. The General Assembly has determined that a sexual offender's SVP status is significant to the operation of the registration and notification provisions of the law. The Assembly has defined the triggering term ("sexually violent predator") and has set forth the factors to be considered in making that determination. This scheme represents a legislative policy judgment concerning the proper response to certain sexual offenders. The question of SVP status is thus a statutory question, not a question of "pure science" and, at least in the absence of a challenge to the propriety of the

substance of the statute, the question of evidentiary relevance is framed by the very provisions of the statute itself, not some external source.

*Id.*

The plain and clear statutory language permits a criminal justice expert such as the licensed clinical social worker in this case, who qualifies as an expert in the behavior and treatment of sexual offenders, to serve on the Board and to perform SVP assessments. Nothing in the statute requires such criminal justice expert to be a licensed psychiatrist or psychologist before he or she may render an expert opinion on the offender's mental state and the ultimate question of whether the offender is an SVP. Accordingly, we hold that, in order to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist; the opinion of a qualifying criminal justice expert suffices.[17] The decision of the Superior Court, therefore, is affirmed.

Chief Justice CAPPY, Justice NEWMAN and Justice SAYLOR and EAKIN join the opinion.

**17.** The Concurring Opinion by Mr. Justice Baer expresses concern with a hypothetical situation: *i.e.,* would the trial court have discretionary power to grant a defense motion to bar the expert testimony of an approved SVP evaluator on grounds that, although the evaluator is an approved member of the Board, he lacks the requisite qualifications either as a general matter or in light of the particular case. Respectfully, this appeal presents no such hypothetical challenge and, contrary to the concurrence's expression of concern, we have rendered no decision on that or any other hypothetical situation. Nothing in this Opinion exists as a bar to a defendant seeking to challenge the qualifications of a proffered Board-approved SVP expert evaluator in a particular case. What is at issue here is whether the Commonwealth may present an otherwise qualified SVP expert evaluator in the face of an objection, external to the statute, that the expert is neither a psychiatrist nor a psychologist; we hold that it can. Moreover, we emphasize that the question here is one of bare qualification and admissibility; the ultimate determination of SVP status is made by the trial judge, who is not obliged to accept the SVP evaluator's expert opinion. The sorts of concerns animating the concurrence are always available in impeaching and arguing the merit and persuasiveness of the evaluator's substantive opinion.

Former Justice NIGRO did not participate in the decision of this matter.

Justice BAER files a concurring opinion.

Justice BAER, concurs.

In *Commonwealth v. Dengler*, 890 A.2d 372 (Pa.2005), I concurred in the result but declined to join the Court's rationale because I found flaw in

> "those aspects of the Majority Opinion that suggest that a statute setting forth factors to gird a particular scientific inquiry in itself relieves a court from conducting an independent analysis under [*Frye v. United States*, 293 F. 1013 (D.C.Cir.1923),] of the novelty of a given theory or method used to address those factors."

*Id.* at 385 (Baer, J., concurring). In writing separately, I noted that the Court's opinion in that case was amenable of more than one interpretation, and emphasized that I distanced myself only from that interpretation that would permit the legislature to preempt by statute a trial court's independent, discretionary assessment of the novelty of the methodology underlying given expert testimony. In the case *sub judice,* the Majority vindicates my fears, citing *Dengler* as authority for the removal from the trial courts of their traditional discretion independently to consider the qualifications of a given expert witness in favor of a broadly worded statute and the self-policing of an administrative body. As in *Dengler,* I believe a far more limited basis for reaching the same result is available to the Court, and I would resolve the case on that rationale.

The Majority correctly observes that "the question of whether a witness is qualified to testify as an expert is a matter resting in the discretion of the trial judge." Maj. Op. 587 Pa. at 151, 897 A.2d at 1174 (citing *Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1267 (2002)). Thus, as the Court recognized in *Dengler,* we evaluate trial courts' determinations regarding the admissibility of evidence by an

abuse of discretion standard. *Dengler*, 890 A.2d at 379.[1] Accordingly, we will disturb the trial court's ruling only where that ruling reflects "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003)) (internal quotation marks omitted). Having so established this standard in both cases, however, the Majority proceeds unaccountably to sanction the legislature's evisceration of trial court discretion and replace it with the legislature's own standardized criteria—criteria that amount to a yes or no checklist that, once satisfied, compels a trial judge to admit a given expert regardless of any case-specific peculiarities that call into question the wisdom or utility of doing so.

To be clear, I do not believe this case presents difficult facts. I agree with the Majority that social workers are not, by virtue of that credential, precluded from testifying as to a sex offender's status as a sexually violent predator (SVP). I take no issue in principle with the legislature's prerogative to establish such criteria, and agree that there is a "forensic" component as well as a "clinical" component to an SVP assessment. I do not object to the statutory creation of the Sexual Offender Assessment Board (Board), or its perform-ance, through its members, of the tasks assigned it by statute. Finally, I agree that the social worker who testified in this case was eminently qualified to testify regarding Appellant's SVP status.

I cannot agree, however, that a member of the Board is, as a function of that membership, presumptively qualified to testify in a given case as to whether an offender is an SVP, and I do not believe it is the place of the legislature or an administrative agency to impose such a rule at the expense of trial court discretion. Although I view the Board's current membership criteria as salutary and likely to result in a Board composed of qualified criminal justice experts in the relevant

---

1. I share the Majority's view that this case presents a challenge to the admissibility, rather than the sufficiency of the evidence. *See* Maj. Op. 587 Pa. at 152, 897 A.2d at 1175 n. 12.

disciplines competent to testify as to offenders' SVP status,[2] I find cause for concern that those criteria were established by the Board for the Board, and that nothing in the law as presently constituted precludes the Board from lowering its bar to membership. Moreover, although I believe that the vast majority of individuals who satisfy the current criteria for Board membership will satisfy any trial court of their qualifications to testify as to offenders' SVP statuses, I have no trouble imagining an individual who satisfies these criteria and yet reasonably may be found unqualified to testify in a given case. According to the Board's own criteria, a person would be qualified to sit on the Board and conduct the assessments here in question with only two semesters of academic work and approximately one year of research regarding sex offenders. Even if the criteria were self-evidently exhaustive of all any trial court might reasonably demand of an expert witness, however, that would not vitiate my concern that the Board might, at any time, change its criteria to admit less qualified individuals to its membership.[3] Under the present scheme, the only meaningful hedge against such an eventuality is to

**2.** As noted by the Majority, Maj. Op. 587 Pa. at 154, 897 A.2d at 1176 n. 14, the Board has administratively defined "criminal justice expert" for purposes of qualifying individuals to serve on the Board as someone with at least a Master's degree in social work, counseling, criminology, human sexuality, or criminal justice, and a minimum of 2000 hours of experience with sex offenders through direct service, education, research, or supervision.

**3.** For this reason, I reject the Majority's suggestion that the absence of a definition for "criminal justice expert" in Megan's Law II is "of no moment" simply because the witness in this case is undisputedly qualified. *See* Maj. Op. 587 Pa. at 154, 897 A.2d at 1176. First, there is circularity here, no matter how intuitive it is that the witness in this case is qualified. Second, this observation by the Majority would be far more agreeable had it chosen to decide this case on the narrow grounds of one witness's qualifications. Instead, however, the Majority effectively cedes to an administrative agency that is not directly accountable to the electorate the prerogative to change its criteria at will. Had the legislature seen fit to define this term with some particularity, one would be entitled to the comfort that its modification would require the subscription of a majority of legislators, each directly accountable to the electorate. As it stands, however, a wholly unaccountable body has full discretion to define who is qualified to render testimony that may subject an offender to a lifetime of onerous registration and counseling requirements and harsh penalties should he or she fail to comply.

preserve trial court discretion to assess each proffered expert on his or her individual merits.

Regarding the narrow question presented, I would find that our legislature, acting well within its province, has made clear the intuitive proposition that social workers, whose professional work often involves counseling sex offenders and others, may be qualified to make diagnoses and assessments of the sort necessary in the SVP assessment context. In fact, I adopt in full the Majority's discussion of the general qualification of social workers to testify regarding SVP status. But expert witnesses, in being identified as such, exercise a powerful and potentially prejudicial influence over juries, and trial judges are best situated to ensure that the title "expert witness" is not abused.

The Majority notes that Megan's Law II "does not say, or even suggest, that SVP assessments may only be performed by those on the Board who are psychiatrists or psychologists (with expertise in the treatment of sexual offenders)." Maj. Op. 587 Pa. at 154, 897 A.2d at 1176. Thus, the Majority finds that the legislature did not intend to exclude social workers, generally, from conducting SVP assessments. As I have already noted, I find no quibble with this proposition. But neither does the statute say, nor even suggest, that the legislature intended, with Megan's Law II, to vitiate the trial court's discretion to reject a particular individual proffered as an expert witness, notwithstanding that he satisfies broadly stated legislative or administrative criteria, because the trial judge finds in his or her discretion that the witness is not qualified to testify under the peculiar circumstance of the witness's own background and experience and the facts of the case in question.

I agree, for the narrow reasons acknowledged by the Majority, that the expert in this case was qualified to testify as to his assessment of Appellant's SVP status, and thus I would affirm the lower courts' rulings to that effect. I disagree, however, that such a ruling needs come at the expense of the time-honored trial court function of discriminating among witnesses and evidence to discern what is fit for consideration in his or her courtroom. I do not believe that a trial judge, in

some future case, would *ipso facto* abuse his or her discretion by declining to admit the testimony of a person who had attained membership on the Board for want of some qualifying element. Unfortunately, I believe that the Majority's analysis will bind us to precisely that result.