J-S81038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID L. ZEIGAFUSE | |
| Appellant | No. 872 EDA 2016 |

Appeal from the Judgment of Sentence December 14, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001557-2014

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 05, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Northampton County following Appellant's plea of *nolo contendere* to one count of indecent assault--less than 13 years old, one count of corruption of minors, one count of endangering the welfare of a child, and one count of indecent exposure.[1]  We affirm.

The relevant facts and procedural history are as follows:  Appellant was arrested, and on September 1, 2015, represented by counsel, he proceeded to a hearing at which he entered a plea of *nolo contendere* to the

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6103(a), 4304(a), and 3127(a), respectively.

[*] Former Justice specially assigned to the Superior Court.

charges indicated *supra*. At the hearing, the Commonwealth presented evidence of a video from Walmart depicting Appellant taking his eight-year old daughter into the men's bathroom and then exiting fifteen minutes later. N.T., 9/1/15, at 7. The child later reported that, while in the bathroom, Appellant showed her his penis and had sexual contact with her. ***Id.***

At the conclusion of the hearing, the trial court ordered the Pennsylvania Sexual Offenders Board ("the Board") to evaluate whether Appellant qualified as a sexually violent predator ("SVP") under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10 *et seq*. ***Id.*** at 8-9. The trial court further ordered a full presentence investigation ("PSI") be performed. ***Id.*** at 9.

On December 14, 2015, Appellant proceeded to a hearing at which the trial court initially conducted a SVP hearing. Specifically, Paula Brust, a member of the Board who the trial court deemed to be qualified to testify as an expert in the field of sexual offender assessment, indicated that she reviewed the pertinent police reports, affidavit of probable cause, the victim's interviews, the March 1, 2015, psychiatric report prepared by Dr. Alex Thomas, and the May 12, 2015, psychological report prepared by Dr. Robert Wisser. N.T., 12/14/15, at 11. She noted the Board sent a letter to defense counsel requesting that Appellant participate in an interview, but defense counsel failed to respond. ***Id.*** at 13. She further noted that

Appellant's failure to participate in the evaluation did not prevent her from conducting an assessment as to Appellant's SVP designation. *Id.*

Ms. Brust opined that, based on her evaluation and to a reasonable degree of certainty, Appellant has a personality disorder or a mental abnormality, *i.e.*, he meets the diagnostic criteria set forth in the Diagnostic and Statistical Manual, fifth edition, for the diagnosis of pedophilic disorder. *Id.* at 14, 16. Ms. Brust explained that the essential features of a pedophilic disorder are (1) the person has at least six monthly intense, sexually arousing fantasies, sexual urges, or behavior involving sexual contact with prepubescent children, who are generally thirteen years old or younger, (2) the person has acted on these sexual urges or fantasies, and (3) the person is at least sixteen years old and at least five years older than the victim. *Id.* at 14-15. Ms. Brust opined "[Appellant] meets all [of] th[e]se diagnostic criteria [for] having sexually assaulted his minor daughter for a number of years in various ways." *Id.* at 15.

Ms. Brust noted that some of the specific facts which support her opinion include the fact Appellant sexually assaulted his minor daughter from January 2009 to December 2013. *Id.* Moreover, the victim was three years old when the assaults began and eight years old when the assaults were disclosed. *Id.* Ms. Brust noted the assaults were disclosed when someone witnessed the abuse and Appellant took a risk by assaulting the victim in public. *Id.* Moreover, Ms. Brust noted the victim reported that Appellant

sexually assaulted her in their home in various ways, including rubbing her genitals, exposing himself to her, and rubbing his penis on and in her vaginal area. *Id.* at 15-16.

Ms. Brust also opined, to a reasonable degree of certainty, that Appellant has engaged in predatory behavior. *Id.* at 16-17. She noted "[p]redatory is defined as an act directed at a stranger or a person with whom a relationship has been maintained, established, promoted or initiated in whole or in part for purposes of sexual victimization." *Id.* at 16. In this regard, she opined that Appellant assaulted his daughter for many years in different places, some of them to include public places, and his relationship with her "wasn't a caring, loving father like he should have been." *Id.* at 17. She noted the relationship was "twisted and altered" so he could assault her. *Id.*

Finally, Ms. Brust opined, to a reasonable degree of certainty, that Appellant is likely to reoffend and that his mental disorder is not curable. *Id.* In this regard, she noted the sexual assaults did not end until someone witnessed the abuse.

Based on all of the aforementioned, Ms. Brust opined, to a reasonable degree of certainty, that Appellant meets the statutory criteria to be classified as a SVP. *Id.*

On cross-examination, Ms. Brust admitted that, in his psychiatric report, Dr. Thomas did not include the diagnosis of pedophilic disorder. *Id.*

at 23.  Further, she admitted Dr. Wisser did not reference pedophilic disorder in his psychological report.  *Id.* at 24-25.

However, on redirect-examination, Ms. Brust noted that, in his psychiatric report, Dr. Thomas indicated Appellant should have a sexual offender evaluation and, if found to be a sexually violent offender, Appellant should be enrolled in a sex offender program.  *Id.* at 29-30.  Moreover, Ms. Brust noted that, in Dr. Wisser's psychological report, he indicated that Appellant should have a sexual offender evaluation and then follow through with any recommendations.  *Id.* at 30.  Thus, Ms. Brust testified both doctors contemplated that someone would evaluate Appellant for purposes of determining whether he is a sexually violent predator and that is precisely what she did.  *Id.* at 30-31.

At the conclusion of Ms. Brust's testimony, the trial court indicated it was moving on to the sentencing hearing and the court had in its possession a PSI report.  *Id.* at 36.  The trial court permitted the victim's mother to read into evidence a victim impact statement.  *Id.* at 37-42.  The trial court heard testimony from Appellant's mother, who indicated Appellant would not "hurt a fly...[and would] give the shirt off his back to anybody that needed it."  *Id.* at 47.

The trial court asked Appellant if he would like to make a statement, and Appellant indicated "No."  *Id.* at 48.  The prosecutor asked the trial court to take into account the seriousness of the offenses, as well as

Appellant's need for rehabilitation. *Id.* at 43. Appellant's counsel asked for a standard range sentence. *Id.* at 48-49.

At the conclusion of all testimony, the trial court, indicating it had reviewed the PSI report, the sentencing guidelines, and the plea colloquy, stated the following:

> [Appellant], you are a very sick individual and you need serious, serious treatment. And clearly the County of Northampton is not suitable to give you that treatment.
>
> When I balance your rehabilitative needs versus the need to protect society, on a whole, I come to one conclusion that you need to be placed in confinement for a period of time that is going to allow you to receive sufficient treatment, that these deprivations would never take place again.
>
> ***
>
> On the first count of indecent assault I sentence you to 12 to 84 months in a state correctional institution.
>
> On the corruption of minors charge I sentence you to a consecutive term of 12 to 84 months in a state correctional institution.
>
> On the endangering the welfare of a child, I sentence you to a consecutive term of 12 to 84 months in a state correctional institution.
>
> I sentence you to a consecutive term of 60 months probation on the remaining charge of indecent exposure.

*Id.* at 49-51.

The trial court then indicated it found Appellant to be a SVP and subject to all requirements of SORNA. *Id.* at 52. The trial court noted it made this finding based upon the experts' reports and, in particular, found "the opinion of Ms. Brust is credible[.]" *Id.* Appellant was then provided with his post-sentence and appellate rights.

On December 24, 2015, Appellant filed a timely, counseled post-sentence motion, which the trial court denied, and this timely appeal followed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive opinion.

Appellant first contends the trial court erred in classifying him as a SVP since the Commonwealth failed to prove by clear and convincing evidence that Appellant meets the criteria for such a classification. Specifically, Appellant suggests Ms. Brust's testimony failed "to rise to the level of the clear and convincing standard[.]"[2] Appellant's Brief at 12.

The standards governing our review of the sufficiency of the evidence with respect to a SVP determination are well established:

> A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must determine whether the evidence admitted at [the SVP hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the [statute]. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.
> At a hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. In reviewing the sufficiency of the evidence regarding the

_____

[2] Appellant also suggests the trial court erred in failing to announce its SVP determination prior to imposing Appellant's sentence. *See* Appellant's Brief at 11. We find this specific issue to be waived as Appellant failed to include it in his court-ordered Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii).

determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to establish each element required by the statute.

*Commonwealth v. Evans*, 901 A.2d 528, 534 (Pa.Super. 2006) (citations omitted; bracketed information in original).

SORNA defines a SVP as:

[a] person who has been convicted of a sexually violent offense as set forth in § 9795.1 (relating to registration)[3] and who is determined to be a sexually violent predator under § 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792 (footnote added). SORNA defines a "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* Further, SORNA defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Among the relevant sections of SORNA, Section 9795.4 provides:

**§ 9795.4. Assessments**

_____

[3] Appellant does not dispute that he was convicted of such an offense.

**(a) Order for assessment.**—After conviction but before sentencing, a court shall order an individual convicted of an offense specified in [S]ection 9795.1 (relating to registration) to be assessed by the board.  The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

**(b) Assessment.**—Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments.   An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

    (i) Whether the offense involved multiple victims.

    (ii) Whether the individual exceeded the means necessary to achieve the offense.

    (iii) The nature of the sexual contact with the victim.

    (iv) Relationship of the individual to the victim.

    (v) Age of the victim.

    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

    (vii) The mental capacity of the victim.

(2) Prior offense history, including:

    (i) The individual's prior criminal record.

    (ii) Whether the individual completed any prior sentences.

    (iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

    (i) Age of the individual.

    (ii) Use of illegal drugs by the individual.

    (iii) Any mental illness, mental disability or mental abnormality.

    (iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4.

The above Section delineates a non-exclusive list of factors to consider in the SVP assessment of a defendant. "[However,] there is no statutory requirement that all of [the factors] or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation." *Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa.Super. 2010) (quotation omitted). Thus, "[t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case." *Id.* (quotation omitted). Moreover, "to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist" of a personality disorder or mental abnormality. *Commonwealth v. Conklin*, 587 Pa. 140, 158, 897 A.2d 1168, 1178 (2006).

Instantly, in concluding the Commonwealth carried its burden, the trial court reasoned as follows:

> On December 14, 2015, a [SVP] hearing was held in which [Ms.] Brust, who was accepted as an expert by th[e] [c]ourt, testified as follows to a reasonable degree of certainty[.] The purpose of the assessment is to determine whether or not [Appellant] meets the criteria set forth in the statute to be classified as an SVP. In formulating her opinion, she relied on police reports, Affidavits of Probable Cause, children's advocacy interviews with the victim, psychiatric and psychological evaluations, among other things. Ms. Brust did not have a chance to interview [Appellant] personally because there was no response as to his participation from counsel. According to the statute, [Appellant] may be evaluated for SVP designation despite his lack of participation and must possess either a mental abnormality or a personality disorder that makes it likely

- 10 -

that he will engage in predatory sexual behavior. In Ms. Brust's expert opinion, [Appellant] does meet the diagnostic criteria set forth in the Diagnostic and Statistical manual for the diagnosis of pedophilic disorder, which is characterized by at least six monthly intense sexually arousing fantasies, sexual urges or behaviors involving sexual contact with a prepubescent child, generally age 13 or younger. In order to have pedophilic disorder, a person must also have acted on these sexual urges or fantasies and be over the age of 16 and at least 5 years older than the victim.

Here, [Appellant] was reported to have sexually assaulted his minor daughter between January 2009 and December 2013. She was approximately three years old when the assault began and eight years old when it was finally disclosed. Additionally, the victim was interviewed and said her father would assault her multiple times and in multiple ways, rubbing her genital area, exposing himself and rubbing his penis on and in her vaginal area. Further, the places in which [Appellant] assaulted his daughter included public places, which is essentially how [Appellant] got caught. It is Ms. Brust's expert opinion that had [Appellant] not gotten caught he would have continued the assault and, thus, is likely to reoffend.

***

Here, Ms. Brust. . .testified that, in her expert opinion, [Appellant] has pedophilic disorder. As discussed [above], Ms. Brust identified each of the elements of this disorder and explained to the [c]ourt how [Appellant] meets each of these criteria to a degree of professional certainty.

Trial Court Opinion, filed 4/7/16, at 2-3.

The records supports the trial court's sound reasoning. *Evans*, *supra*.

Additionally, we note that, as to the "predatory" element set forth under

SORNA, Ms. Brust testified that Appellant was not a caring, loving father;

but rather, he had a "twisted and altered" relationship with the victim which

promoted the sexual assaults. N.T., 12/14/15, at 17. The trial court was

free to accept Ms. Brust's testimony, and we conclude the evidence was

- 11 -

sufficient to support Appellant's SVP classification under the clear and convincing standard.

Appellant next contends the trial court abused its discretion in imposing an excessive sentence where the maximum sentence is seven times the minimum sentence for the offenses of indecent assault, corruption of minors, and endangering the welfare of children. In this regard, Appellant concedes the minimum sentence for each offense is within the standard range of the sentencing guidelines, *see* Appellant's Brief at 13; however, he argues the sentences are excessive in light of the trial court's failure to consider the factors set forth in 42 Pa.C.S.A. § 9721(b) related to the protection of the public, the gravity of the offense, and the rehabilitative needs of Appellant. [4]

Appellant's issue challenges the discretionary aspects of his sentence, for which there is no automatic right to appeal. **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa.Super. 2010). To reach the merits of a

_____

[4] We note that 42 Pa.C.S.A. § 9756(b) provides that "[t]he court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." In the case *sub judice*, Appellant does not dispute that his minimum sentences do not exceed one-half of the maximum sentences imposed. Moreover, we note that, while "a sentencing court must impose a maximum sentence that is at least twice the minimum[,]. . .there is no restriction placed on the court's decision regarding the maximum sentence, aside from the statutory maximum[.]" **Commonwealth v. Edwards**, 906 A.2d 1225, 1230 (Pa.Super. 2006).

discretionary aspects of sentencing claim, this Court must conduct a four-part analysis to determine:

> (1) whether appellant filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted). A substantial question exists when "the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013) (citations and quotation marks omitted).

Here, Appellant filed a timely notice of appeal, sufficiently raised the issue in his timely post-sentence motion,[5] and complied with the briefing requirements of Pa.R.A.P. 2119(f). Moreover, we conclude the issue presents a substantial question permitting our review. *See Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (holding the argument that "the trial court failed to consider the factors set forth in 42 Pa.C.S.A. § 9721(b)" presented a substantial question for our review).

---

[5] He also adequately presented the issue in his court-ordered Rule 1925(b) statement.

- 13 -

Turning to the merits, our standard of review of a sentencing challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Johnson***, 125 A.3d 822, 826 (Pa.Super. 2015) (citation omitted).

> When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.A.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

***Commonwealth v. Caldwell***, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (citation and quotation marks omitted). "Where, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." ***Johnson***, 125 A.3d at 827 (citation omitted).

In the case *sub judice*, the trial court specifically indicated it had in its possession the PSI report, the reports of Drs. Thomas and Wisser, the sentencing guidelines, and Appellant's plea colloquy. N.T., 12/14/15, at 36. The trial court accepted into evidence Appellant's medical records and heard

statements from the victim's mother, as well as Appellant's mother. In imposing its sentence, the trial court specifically stated it was considering Appellant's rehabilitative needs versus the need to protect society as a whole. *Id.* at 49.

Moreover, in its opinion, the trial court noted:

[Appellant] claims that the sentence imposed upon [him] is excessive and an abuse of discretion where the maximum sentence is seven (7) times the minimum sentence for indecent assault, corruption of minors, and endangering the welfare of children. The sentences imposed, however, do not exceed the statutorily prescribed limits and are not so manifestly excessive as to constitute too severe a punishment given the alarming circumstances which surround the reported incidents of abuse (including, but not limited to: the age of the victim, the frequency of the abuse and [Appellant's] relationship with the victim). Therefore, the sentences imposed do not transgress the bounds of th[e] [c]ourt's sentencing discretion.

Trial Court Opinion, filed 4/7/16, at 4.

We find no abuse of discretion in this regard, *Johnson*, *supra*, and for all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2016

- 15 -