J-A23028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PHILIP REID MCCREADY | |
| Appellant | No. 1455 WDA 2014 |

Appeal from the Judgment of Sentence May 15, 2014
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001616-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 20, 2015**

Phillip Reid McCready appeals from the judgment of sentence, entered in the Court of Common Pleas of Blair County, after he was convicted by a jury of rape of a child,[1] incest,[2] and related offenses.[3]  The convictions arose out of McCready's repeated sexual abuse of his niece, S.L.H.  After careful review, we affirm.

_____

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S. § 4302.

[3] McCready was also convicted of rape, 18 Pa.C.S. § 3121, involuntary deviate sexual intercourse person less than 13 years of age, 18 Pa.C.S. § 3123(b), false imprisonment, 18 Pa.C.S. § 2903, indecent assault, 18 Pa.C.S. § 3126, indecent assault person less than 13 years of age, 18 Pa.C.S. § 3126(a)(7), and corruption of minors, 18 Pa.C.S. § 6301.

The trial court summarized the facts of this case as follows:

S.L.H., who was 11 when she testified at trial in January, 2014, testified that in the summers of 2009 and 2010 [McCready], [her uncle] who was approximately in his [thirties], stuck his penis in her bottom and made her hold his penis. She also said he put his penis in her bottom and in her vagina a little bit, and that he stuck his penis in her mouth and peed a little in her mouth, which felt really nasty and gross. S.L.H. testified further that [McCready] trapped her in the bedroom and physically restrained her from leaving. The jury found this testimony[4] credible and convicted [McCready] of all charges levied against him.

Trial Court Opinion, 9/24/14, at 2.

Prior to sentencing, on April 9, 2014, McCready filed a motion asserting that after-discovered evidence exists that would demonstrate his innocence. Specifically, the motion was based upon the fact that after the trial in the instant matter, S.L.H.'s paternal uncle was under investigation for sex crimes allegedly committed against a different victim, an adult family member. Prior to a scheduled interview with police, the paternal uncle committed suicide. McCready presented this information in an attempt to shift responsibility for S.L.H.'s victimization to her paternal uncle. The motion requested various forms of relief, including, among other things, that McCready's sentencing be stayed, that the suicide be investigated, and that

_____

[4] Additionally, a forensic interview of S.L.H. was conducted at the Children's Resource Center of Pinnacle Health in Harrisburg, Pennsylvania. A video recording of the interview was admitted into evidence and played for the jury during the trial.

S.L.H. be referred for a forensic interview regarding the paternal uncle. The motion was denied on April 29, 2014, following an evidentiary hearing.

McCready was sentenced on May 6, 2014, to an aggregate term of 25 to 50 years' incarceration. McCready filed a post-sentence motion, which was denied. This timely appeal followed.

McCready raises the following issues[5] on appeal:

1. Whether the trial court committed error when it admitted the child forensic interview into evidence without sufficient foundation – no [C]ommonwealth witness testified to the interview method or was subject to cross examination establishing the appropriateness of the method actually used[,] violating [McCready's] rights to due process and confrontation.

2. Whether the court erred in giving jury instruction 4.13B – in that giving the jury instruction vouches for the Commonwealth's evidence[,] sending the message to the jury that the court was on the side of the Commonwealth.

3. Whether the court erred in finding sufficient evidence to support the verdict because the sole evidence offered originated from the victim and [McCready] countered with alibi-like witnesses.

_____

[5] McCready initially raised an additional issue in his court-ordered Pa.R.A.P. 1925(b) statement, arguing that the trial court improperly sentenced him to a mandatory minimum sentence. McCready indicated that the Commonwealth had not provided the requisite notice that it would be seeking a mandatory minimum sentence. However, the trial court specifically stated at the sentencing hearing that it was not sentencing McCready on a mandatory minimum basis. McCready has apparently abandoned this issue, as it has been omitted from his brief. Moreover, we discern no error on the part of the trial court where the court and the parties understood at the time of sentencing that the sentence was not being fashioned according to a mandatory minimum scheme.

4. Whether the court erred in giving the evidence adduced at trial substantial weight supporting the verdict.

5. Whether the court erred in denying [McCready's] after acquired evidence motion where the evidence alleged was not available or discoverable prior to trial and has a fair likelihood of revealing an alternative perpetrator in the victim's [paternal uncle] who committed suicide post-trial.

6. Whether the trial court erred by basing [its finding that McCready is a sexually violent predator] on the opinion of the [Pennsylvania Sexual Offenders Assessment Board] assessor where that opinion is not based on empirical data.

Appellant's Brief, at 8-9.

In reviewing the admissibility of evidence, "an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." ***Commonwealth v. Cox***, 115 A.3d 333, 336 (Pa. Super. 2015) (citations omitted).

In his first issue, McCready challenges the trial court's decision to admit the videotaped interview of S.L.H. into evidence. McCready asserts that due process required the Commonwealth to present the individual who interviewed S.L.H. to be cross-examined regarding the methodology used to complete the interview. Rather than asserting a lack of confrontation of the witness, McCready claims that "the unique facts of this case present a new question of law and fact[, which is] when and to what extent [] a defendant [has] the right to challenge the veracity of the method used in the exercise of [a] child forensic interview." Appellant's Brief, at 14.

The tender years exception provides for the admissibility of certain statements, that otherwise may be considered hearsay, as follows:

**(a) General rule.--**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. [§ 31 (relating to sexual offenses)], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a).

Pursuant to section 5985.1(a), once the court determines that out-of-court statements are relevant and possess the required indicia of reliability, they will be admissible provided the child testifies at trial or is unavailable. This exception was created due to the fragile nature of child victims of sexual abuse. *Commonwealth v. Fink*, 791 A.2d 1235 (Pa. Super. 2002). The standard for determining whether the statements possess the required indicia of reliability was set forth in *Idaho v. Wright*, 497 U.S. 805 (1990). Obvious factors tending to demonstrate reliability include: (1) the spontaneity and consistent repetition of the statements; (2) the mental state of the declarant; (3) the use of terminology unexpected in a child of similar

age; and (4) the lack of a motive to fabricate. ***Commonwealth v. Walter***, 93 A.3d 442, 451 (Pa. 2014).

Instantly, the trial court conducted an in camera review of S.L.H.'s videotaped interview. The court found that the video was relevant and that "the time, content, and circumstances of the statement provides sufficient indicia of reliability" to make the video admissible under section 5985.1. N.T. Jury Trial, 1/22/14, at 20.

The record reveals that prior to trial, S.L.H. was determined to be competent to testify. The statements S.L.H. made at trial and in the interview were consistent. The record indicates no motive for S.L.H. to fabricate, nor does it indicate that S.L.H.'s memory or testimony was tainted in any way. For these reasons, we can discern no abuse of discretion on the part of the trial court in determining that the videotaped interview contained indicia of reliability satisfying subsection 5985.1(a)(1). S.L.H. testified at trial, thus satisfying the remaining prong in subsection 5985.1(a)(2)(i).

Moreover, McCready makes no claim that S.L.H.'s memory actually was tainted. Instead, he argues that he is entitled to an opportunity to cross-examine the interviewer to potentially determine that the interview was somehow improperly conducted. However, McCready's argument that the video should not have been admissible because he could not cross-examine the interviewer simply has no basis in the statutory language of the

tender years exception.[6] The trial court therefore did not err or abuse its discretion in permitting the videotaped interview to be admitted into evidence and be viewed by the jury.

In his next issue, McCready claims that the trial court erred in its instruction to the jury that S.L.H.'s uncorroborated testimony, if found credible, provided sufficient evidence to convict him. This argument is unpersuasive, however, since Pennsylvania law specifically provides that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006). Moreover, as we stated in *Commonwealth v. Trippett*, 932 A.2d 188, 201 (Pa. Super. 2007), "the instruction tracked the Suggested Standard Jury Instructions" in Pa.S.S.Crim.J.I. § 4.13(B) and was appropriately given to the jury where the defendant was charged with IDSI and the victim provided uncorroborated testimony that defendant placed his tongue in her vagina, performed oral sex on her, and forced her to place his penis in her mouth. Thus, we find no merit in McCready's claim.

_____

[6] Indeed, the trial court noted that the manner in which the interview was conducted actually supported the reliability of the videotaped statements since "the interviewer was essentially a question-asking conduit and not a participant in the sense of whether the events occurred or whether they did not." N.T. Jury Trial, 1/22/14, at 21.

Next, McCready challenges the sufficiency and weight of the evidence to convict him.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotation marks omitted).

S.L.H. testified that her uncle, who was in his thirties, put his penis in her bottom and her vagina and made her hold his penis. She stated that McCready put his penis in her mouth and "peed a little" inside her mouth. Additionally, S.L.H. testified that McCready trapped her in a bedroom and physically restrained her from leaving. This testimony provides for all of the elements of the crimes for which McCready was found guilty.[7] Thus, the evidence was sufficient to convict McCready.

As to the weight of the evidence,

> [t]he finder of fact is the exclusive judge of the weight of the evidence, as the fact finder is free to believe all, part, or none of

_____

[7] *See* 18 Pa.C.S. §§ 2903, 3121, 3121(c), 3123(b), 3126, 3126(a)(7), 4302, and 6301.

the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

Furthermore,

[W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Rabold*, 920 A.2d 857, 860-61 (Pa. Super. 2007) (citations and quotations omitted).

Instantly, McCready asserts that the verdict is against the weight of the evidence because S.L.H.'s testimony was the sole evidence supporting his convictions and he presented evidence that he would not have been able to be alone with S.L.H. Considering that the jury is tasked with credibility determinations and may believe all, some, or none of the evidence presented, we discern no error on the part of the trial court in denying McCready's weight claim. *Rabold*, *supra*.

McCready next asserts that the trial court erred in denying his motion regarding after-discovered evidence. Our test for awarding a new trial based upon after-discovered evidence is well-settled and involves four prongs: "[t]he evidence (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or

- 9 -

cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." ***Commonwealth v. Castro***, 93 A.3d 818, 821 n.7 (Pa. 2014).

Here, the information presented in the after-discovered evidence motion is not actually evidence. It is merely speculation that S.L.H.'s paternal uncle committed suicide out of guilt and that because he was being investigated for a sex crime against a different victim, he must have also been the perpetrator of the crimes against S.L.H. This is pure conjecture that is unlikely to change the outcome of the matter. Moreover, if the fact of the paternal uncle's suicide were somehow introduced at trial, its sole purpose would be to call into question S.L.H.'s credibility in unequivocally identifying McCready as the perpetrator. ***Castro***, ***supra***. For these reasons, the trial court correctly denied the after-discovered evidence motion.

In his final issue on appeal, McCready claims that the trial court erred in finding that he is a sexually violent predator (SVP) based upon testimony provided by a member of the Pennsylvania Sexual Offenders Assessment Board (SOAB), since such opinion is not based on empirical data. Here, Corrine Scheuneman, a member of the SOAB, was qualified by the trial court as an expert witness regarding sex offender assessment and evaluation. At McCready's sentencing hearing, Scheuneman testified that she had evaluated McCready based upon interviewing him and reviewing documents obtained in an investigation by the SOAB regarding this matter.

Scheuneman testified that, based upon her evaluation, McCready meets the statutory criteria to be classified as a sexually violent predator.

Our Supreme Court has held that the opinion of a criminal justice expert is a sufficient basis to determine a defendant's SVP status. *See Commonwealth v. Conklin*, 897 A.2d 1168, 1178 (Pa. 2006) ("[I]n order to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist; the opinion of a qualifying criminal justice expert suffices."). Thus, because Scheuneman was qualified as an appropriate criminal justice expert prior to rendering her opinion regarding McCready's SVP status, the trial court did not err in classifying McCready as a sexually violent predator. *Conklin*, *supra*.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2015

- 11 -