J-S47044-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SEAN A. DIETRICH | : | |
| | : | |
| Appellant | : | No. 229 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 18, 2019
in the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0001196-2018

BEFORE:    STABILE, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STABILE, J.:                    **FILED JULY 01, 2021**

Appellant, Sean A. Dietrich, appeals from his September 18, 2019 judgment of sentence for sale or transfer of firearms and unsworn falsification to authorities.[1]  We affirm.

The basic facts of the case are as follows.  Carol Brazinski, from C&D Coin and Gun Shop, sells firearms at gun shows.  N.T., 6/12/19, at 8.  When a person is interested in purchasing a gun, Brazinski presents the person with federal and state forms for their completion before proceeding with the sale.  *Id.* at 10-18.  On June 10, 2017, Brazinski provided such forms to Appellant at a gun show at the Leesport Farmers Market in Berks County, Pennsylvania, in response to his request to buy a Smith & Wesson nine-millimeter pistol.  *Id.* at 9, 20, 28.  On the forms, Appellant responded

---

[1] 18 Pa.C.S.A. § 6111(g)(4)(ii) and § 4904(b), respectively.

*Retired Senior Judge assigned to the Superior Court.

affirmatively to a question asking if he had a criminal background, then changed his answer to no and initialed the change. *Id.* at 27. Based on Appellant's answers, Brazinski proceeded to the next step in the sale, which was comparing the appearance of the person before her with the photograph in the driver's license presented to her. *Id.* at 35. Because Appellant's appearance and photograph matched, she then handwrote his driver's license number on the forms and checked his background. *Id.* at 21-29, 35. The background check revealed Appellant had a disqualifying criminal history, so Brazinski did not sell the firearm to Appellant and handwrote a note indicating that she denied his application. *Id.* at 30.

Appellant's application was referred to the Pennsylvania State Police, and later, to the Berks County police department. Based upon the false answer he provided on the application, Appellant was charged with sale or transfer of firearms and unsworn falsification to authorities. Following a bench trial on June 14, 2019, the trial court found Appellant guilty of the charged crimes and sentenced Appellant on September 18, 2019, to three to seven years of incarceration. Appellant timely filed a post-sentence motion raising challenges to the sufficiency and weight of the evidence. Following denial of the post-sentence motion, Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant raises the following issues.

[1.] Was the evidence at trial legally insufficient to sustain a conviction of:

>[a.] Sale or transfer of firearms, as Appellant was only alleged to have attempted to purchase a firearm, but no purchase actually took place; the statute does not include mere "attempts" to purchase firearms, and Appellant was never charged with criminal attempt?
>
>[b.] Both charges as evidence produced at trial was insufficient to convict Appellant of either offense as the forms giving rise to the offenses were never even admitted as evidence at trial, would have been inadmissible as not properly-authenticated had the Commonwealth bothered to move for their admission, and without authenticated, admitted forms, the Appellant's alleged inculpatory statements were inadmissible pursuant to the *corpus delicti* rule?

[2.] Did the verdict go against the weight of the evidence, as no substantially inculpatory evidence remains after the proper exclusion of the alleged form and recording?

Appellant's Brief at 8 (some capitalization altered; trial court and suggested answers omitted).

We begin with Appellant's challenges to the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, the standard we apply

>is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of

fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (citations omitted); *see also Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016) ("Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary."). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014). However, "a conviction must be based on more than mere suspicion or conjecture." *Commonwealth v. Thomas*, 194 A.3d 159, 166 (Pa. Super. 2018) (citation and quotation marks omitted).

Appellant's first issue also requires us to interpret the Criminal Code. Because statutory interpretation is a question of law, we use a *de novo* standard and plenary scope of review. *Commonwealth v. Ballard*, 244 A.3d 815, 819-20 (Pa. Super. 2020). Further,

[i]n all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S.[A.] §[§] 1501[-1991], which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the

> General Assembly. Generally, a statute's plain language provides the best indication of legislative intent. We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S.[A.] § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning.

*Commonwealth v. Torres-Kuilan*, 156 A.3d 1229, 1231 (Pa. Super. 2017) (citation omitted).

In the first part of Appellant's challenge to the sufficiency of the evidence, he argues the Commonwealth failed to establish the crime of sale or transfer of firearms because there was never a sale of a firearm. Appellant's Brief at 14-20. Appellant focuses on the language "in connection with the purchase … of a firearm" used in 18 Pa.C.S.A. § 6111(g)(4)(ii). He argues that the Commonwealth failed to prove that he made false statements in connection with a purchase because Brazinski did not sell him a firearm at the market and the statute does not apply to attempted purchases. *Id.* Appellant contends the plain language of the statute supports his interpretation, or, alternatively, that the statute is ambiguous. *Id.* at 19. In his view, if the legislature intended to cover attempted purchases of firearms, it would have added words such as "purchase or attempted purchase" to the statute. *Id.* at 14. He also emphasizes that the Commonwealth could have charged him with criminal attempt under 18 Pa.C.S.A. § 901(a). *Id.* In support of his position, he cites to an

unpublished memorandum of this Court,[2] as well as other unrelated statutes where the legislature used the phrase "in connection with the purchase" alongside specific language about an attempted purchase. *Id.* at 15-18.

The subsection under which Appellant was convicted for the sale or transfer of firearms provides that

> **[a]ny person**, **purchaser or transferee** commits a felony of the third degree if, **in connection with the purchase, delivery or transfer of a firearm** under this chapter, he knowingly and intentionally … makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]

18 Pa.C.S.A. § 6111(g)(4)(ii) (emphasis added).

The flaw in Appellant's interpretation of the statute is that it zeroes in on the phrase "in connection with the purchase … of a firearm" and ignores the opening clause referring to "[a]ny person, purchaser or transferee." *Id.* "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). "Any person" is plainly broader than a "purchaser" or "transferee." The legislature's use of a term broader than purchaser or transferee is significant, particularly when considered with the phrase "in connection with the purchase, delivery or transfer of a firearm." The common and approved usage of the phrase "in connection with," which

---

[2] The unpublished memorandum decision to which Appellant cites was issued prior to May 2, 2019. Pursuant to this Court's Operating Procedures, neither this Court nor a party in any action or proceeding may rely upon or cite to such decisions except in circumstances not present here. 210 Pa. Code § 65.37. Additionally, because unpublished memorandum decisions are not precedential, this Court is not bound to follow them. *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1286 (Pa. Super. 2013).

we are obligated to employ, *see* 1 Pa.C.S.A. § 1903(a), does not suggest it is a limiting term such that a violation only is deemed to occur when a purchase, delivery, or transfer is actually completed. The term "in connection with" connotes activity that is in relation to a purchase, delivery, or transfer of a firearm. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/in%20connection%20with, accessed 5/27/21. Providing materially false information in connection with the attempt to purchase a firearm is precisely activity conducted in relation to the purchase of a firearm. Any other interpretation would lead to the absurd result that the General Assembly meant to criminalize a false written statement on an application when a purchase is completed, but not when a background check catches the falsehood before the purchase is concluded. *See* 1 Pa.C.S.A. § 1922(1) (in ascertaining legislative intent it is presumed the General Assembly did not intend an absurd result).

Despite Appellant's insistence that an actual purchase must take place for a sale to apply, the plain language of the statute indicates that it applies to any person (*i.e.*, someone other than a purchaser or transferee) who provides false information in connection with (*i.e.*, in relation to) a purchase of a firearm. There is no requirement in the statute that the purchase be completed for a violation to occur. Accordingly, subsection 6111(g)(4)(ii)'s use of the terms "any person" and "in connection with" encompasses persons, like Appellant, who are charged with and convicted of making a

materially false statement in connection with an attempted purchase of a firearm. *Accord Commonwealth v. Baxter*, 956 A.2d 465, 474 (Pa. Super 2008) (*en banc*), *appeal denied*, 968 A.2d 1280 (Pa. 2009) ("[T]he plain language of [subs]ection 6111(g)(4), when taken in proper context of the statute as a whole, clearly places prospective purchasers on notice that they will be subject to prosecution for a third[-]degree felony if they make any oral or written materially false statement in connection with that attempted purchase of a firearm."); *Commonwealth v. Emmil*, 866 A.2d 420 (Pa. Super. 2004) (affirming conviction of defendant who made false statements to authorities in connection with an attempted firearm purchase).

We turn now to the second part of Appellant's sufficiency argument, which he raises with respect to both of his convictions. Appellant argues that the Commonwealth failed to introduce sufficient evidence that a form bearing false information was submitted and that Appellant was the one who submitted it. Appellant's Brief at 21. Specifically, Appellant observes that the Commonwealth marked the forms he allegedly submitted as Commonwealth Exhibit 2, but never moved Exhibit 2 into evidence. *Id.* Without admission of these forms, Appellant contends insufficient evidence exists proving that he submitted false written statements. *Id.* at 22. Appellant insists that had the Commonwealth sought to admit the forms, he would have made an authentication objection that the court would have sustained. *Id.* at 22-24. He argues there was no handwriting comparison

performed of his signature and the forms could have been filled out by someone else who presented his information.  *Id.*

Further, because the Commonwealth did not admit the forms as evidence, Appellant contends there was no *corpus delicti* showing a crime had been committed.  *Id.* at 26.  Without a *corpus*, Appellant argues it was error to admit inculpatory statements captured in recordings of calls he made from jail.  *Id.* at 26.  Without the forms and the recordings of the jail calls, Appellant concludes there was insufficient evidence proving he committed the crimes or that any crime had occurred at all.  *Id.*

We note at the outset that Appellant's argument intermingles challenges to the **sufficiency** of the evidence presented to prove the elements of the crimes and challenges to the **admissibility** of evidence introduced at trial.  "It is important to maintain the distinction between sufficiency review and rulings on evidence."  ***D'Alessandro v. Pennsylvania State Police***, 937 A.2d 404, 409-10 (Pa. 2007).  As our Supreme Court has observed, the "distinction is not academic."  ***Commonwealth v. Conklin***, 897 A.2d 1168, 1175 n.6 (Pa. 2006).  A "successful sufficiency challenge can lead to an outright grant of relief … while a successful evidentiary challenge presumably would result in a remand for another hearing at which the challenged evidence would not be admissible."  ***Id.***  Moreover, when conducting a sufficiency review, "we accept the record of the case as actually litigated" and view it in a light most

favorable to the verdict-winner, instead of looking at the record "as diminished by evidence deemed, after the fact, to have been wrongly admitted." *Id.* In other words, on a sufficiency review, we review the record as it is, not as Appellant thinks it should be. Thus, we will first consider Appellant's sufficiency argument based on all of the evidence in the record. Because Appellant preserved a *corpus deliciti* evidentiary challenge at trial and in his concise statement, we will then consider whether the trial court erred by admitting the recording of the jail calls.

Regarding his sufficiency challenge, Appellant is correct that the applicable subsections of sale or transfer of firearms and unsworn falsification to authorities both require a false written statement. *See* 18 Pa.C.S.A. § 6111(g)(4)(ii) ("Any person **...** commits a felony of the third degree if, in connection with the purchase … of a firearm under this chapter, he knowingly and intentionally … makes **any materially false written statement**, including a statement on any form promulgated by Federal or State agencies[.]") (emphasis added); *id.* at § 4904(b) ("A person commits a misdemeanor of the third degree if he makes a **written false statement** which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.") (emphasis added).

Furthermore, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also

establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018). "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*). "[E]ven if the Commonwealth presented only circumstantial evidence and offered no positive identification of the [perpetrator], we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove Appellant's guilt." *Commonwealth v. Robertson*, 874 A.2d 1200, 1206 (Pa. Super. 2005) (citation omitted). "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Commonwealth v. Lovette*, 450 A.2d 975, 977 (Pa. 1982).

The record indicates the following evidence presented by the Commonwealth. The Commonwealth's first witness at trial was Brazinski, who described the forms she received from Appellant at the gun show. Because she encounters so many people in her line of work, Brazinski did not recall Appellant's attempted transaction specifically and could not identify him in court, but she testified as to her usual procedure and the forms she received. N.T., 6/12/19, at 10-17. The Commonwealth introduced, without objection, the state and federal forms required by law to

- 11 -

purchase a firearm as Commonwealth Exhibit 1. *Id.* at 17-18. Brazinski identified Commonwealth Exhibit 1 as the forms she requires customers to complete before she will sell them a firearm. *Id.* at 11, 16.

The Commonwealth then marked another set of forms as Commonwealth Exhibit 2, but never sought their admission. *Id.* at 19. After reviewing Commonwealth Exhibit 2, Brazinski testified Exhibit 2 was the same forms entered as Exhibit 1 with the addition of Appellant's handwritten answers he provided in front of her at the gun show. *Id.* at 29. Although Brazinski did not remember the specific transaction and could not identify Appellant, she testified the person who filled out the forms with Appellant's name and information was the same person who handed her a driver's license matching the license number she wrote on the form and who resembled the photograph on the license. *Id.* at 23-24, 32-35. Brazinski identified her handwriting on Exhibit 2, including the handwritten driver's license number and notation that she denied the transaction. *Id.* at 19, 21, 23.

According to Brazinski's testimony and Commonwealth Exhibit 1, Question 32 on the Pennsylvania State Police Application/Record of Sale asks in pertinent part, "Are you now charged with, or have you ever been convicted of a crime punishable by imprisonment for a term exceeding one year?" N.T., 6/12/20, at 69; Commonwealth Exhibit 1 at 7 (capitalization altered). The form also contains a verification and warns that answers need

to be true and correct subject to penalty of law, including 18 Pa.C.S.A. § 4904 and the Uniform Firearms Act. *Id.* After initially answering yes to the question, Appellant changed his answer to no and initialed the change. N.T., 6/12/2019, at 17.

Following Brazinski's testimony, the Commonwealth called Vincent Caruso, an assistant inmate telephone system administrator at the Berks County Jail. Through Caruso's testimony, the Commonwealth entered Exhibit 3, which was a DVD containing recordings of telephone calls made from Appellant's inmate number at the Berks County Jail. N.T., 6/12/2019, at 41-46, 51-52. Before the Commonwealth played the jail calls for the trial court, Appellant objected on *corpus delicti* grounds. The trial court overruled the objection and permitted the Commonwealth to play the calls. *Id.* at 48.

On a call made on April 4, 2018, Appellant spoke to someone named Ray. Appellant told Ray that he was upset with his brother Paul for not taking his calls because he was in jail due to "shit with him." Commonwealth Exhibit 3. Appellant said he was a long way from home way out in Berks County because his brother brought him "to that damn gun show." *Id.* He also said, "I'm in here cause I tried to get something for him" and was facing prosecution because of "something about I tried to purchase a 9 millimeter." *Id.* On a call made on May 18, 2018, Appellant

told someone named Autumn[3] that he was upset his brother was not taking his calls because he was "in here because of your father" and "we went to go get a fucking gun for him." *Id.*

After the Commonwealth played the recordings from the jail calls, the Commonwealth presented its final witness, Detective Sergeant Robert Wood from the Northern Berks Regional Police Department. Detective Sergeant Wood received information from the Pennsylvania State Police regarding Appellant's attempt to purchase a firearm. Detective Sergeant Wood reviewed the forms from the attempted firearm purchase and ran the driver's license number on the form to determine whether the attempted purchaser had a criminal history. N.T., 6/12/2019, at 60-62. Detective Sergeant Wood testified that the forms he reviewed were the forms marked as Commonwealth Exhibit 2. *Id.* at 62. Through his investigation, Detective Sergeant Wood obtained a phone number for Appellant and left a message. *Id.* at 64-65. After Detective Sergeant Wood filed charges against Appellant, he then received a message that Appellant had called him at the police station. *Id.* at 66. Detective Sergeant Wood returned the call by using the provided number, which matched the number Detective Sergeant Wood originally called. *Id.* at 72. He spoke to a person who identified

---

[3] Appellant's relation to Autumn was not made part of the record. From the context of the call, Autumn seems to be Appellant's niece and his brother Paul's daughter.

himself as Appellant. *Id.* at 67. Detective Sergeant Wood recognized the voice on the jail calls as the same voice he spoke to on the telephone. *Id.*

On the call, Detective Sergeant Wood attempted to obtain Appellant's side of the story and to convince him to turn himself in due to the active warrant against him. *Id.* at 68. Appellant told Detective Sergeant Wood that Appellant "was with his brother and that he was completing a form and that … there was an error made on the form." *Id.* Detective Sergeant Wood believed Appellant's comment referred to question 32 on the state form in Exhibit 2 where Appellant had crossed out his answer and initialed a change. *Id.* at 68.

Finally, the parties stipulated that Appellant had multiple felony convictions that prohibited him from owning a firearm in Pennsylvania. Commonwealth Exhibit 4.

Appellant is correct that the Commonwealth never sought to move Exhibit 2 into the record. There is no question that with Exhibit 2 in evidence, the case would have been more straightforward. Nevertheless, the trial court determined its absence was not fatal for sufficiency purposes. *See* Trial Court Opinion, 7/2/2020, at 5. We agree.[4]

Through Brazinski's testimony, the Commonwealth established Brazinski's records indicated she received a form from Appellant at the gun

_____

[4] We address the absence of the forms from a sufficiency standpoint only, and do not decide whether the absence of the forms could have been subject to evidentiary objections not preserved by the parties.

show; the questions asked of Appellant on the forms; a description of the answers Appellant provided while filling out the forms in front of Brazinski, including the answer that turned out to be false; the process Brazinski used to ensure the identity of the person appearing before her was the same person who filled out the form; and the outcome of the background check of the license number he provided to her. Through Detective Sergeant Wood's testimony, the Commonwealth confirmed the license number matched Appellant's and Appellant was indeed prohibited from owning a firearm due to his criminal background. He also described how, when asked to provide his side of the story, Appellant referenced making an error on the form when he was with his brother. Finally, through the two calls Appellant made from jail, the Commonwealth established that Appellant made two statements implicating himself as the person who provided false information in an attempt to purchase a firearm.

Our review of the entire record, with due consideration of all evidence presented in the light most favorable to the Commonwealth as verdict winner, confirms there was sufficient circumstantial evidence to establish Appellant's identity and sustain Appellant's convictions. Reasonable doubt does not require preclusion of every possibility of innocence. ***Burton***, 234 A.3d at 829. Through Commonwealth Exhibits 1 and 3 and the testimony of Brazinski and Detective Sergeant Woods, the Commonwealth proved the existence of a false written statement and produced circumstantial evidence

of Appellant's identity as the person who made the statement. Accordingly, we conclude the circumstantial evidence produced by the Commonwealth was enough to overcome the presumption of innocence. *See Lovette*, 450 A.2d at 977.

We turn now to Appellant's evidentiary argument regarding *corpus delicti*.

> The *corpus delicti* rule begins with the proposition that a criminal conviction may not be based upon the extra-judicial confession of the accused unless it is corroborated by independent evidence establishing the *corpus delicti*. The *corpus delicti*, literally "the body of the crime," is defined as a wrong committed by criminal means, and consists of the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. The criminal responsibility of a particular, identifiable person, *e.g.* the accused, is not a requirement of the rule. *Commonwealth v. Elder*, 451 A.2d 236, 237 (Pa. Super. 1982). The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime has been committed.

*Commonwealth v. Cuevas*, 61 A.3d 292, 295–96 (Pa. Super. 2013) (some citations omitted or altered).

The *corpus delicti* rule is an evidentiary rule. As such, we use the following standard in our review.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 411 (Pa. Super. 2012).

"The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." *Id.*

> Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

*Id.* at 410-11.

Appellant's argument focuses on the first step, *i.e.*, the admission. Appellant claims the Commonwealth did not "establish by a preponderance of the evidence that any crime at all was committed as there is only a crime if … Appellant executed documents with false information." Appellant's Brief at 25. The trial court determined Brazinski's "testimony alone established the criminal actions of the attempted purchaser." Trial Court Opinion, 7/2/2020, at 3. We agree.

Brazinski testified that the attempted purchaser responded that he had no criminal background when filling out the form, causing her to proceed with the sale. N.T., 6/12/2019, at 26-29. However, when she checked his criminal background through the Pennsylvania Instant Check System, the sale was denied based on that background. *Id.* at 29-30. Based on this information, it is more likely than not that the attempted purchaser

- 18 -

knowingly and intentionally made a false statement when completing the form. *See Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa. Super. 2017) ("The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with an accident.") (citation omitted). Accordingly, we discern no abuse of discretion in the trial court's decision to admit Appellant's inculpatory statements as captured by the recordings of the jail calls.

Appellant's final issue challenges the weight of the evidence against him. Appellant's argument largely rehashes the argument he made regarding his second sufficiency challenge. Appellant's Brief at 28. In Appellant's view, without the jail calls and the form he purportedly filled out, the court was left with Detective Sergeant Wood's testimony, which was "too vague and insignificant" to prove that he made false statements on the forms at the gun show. *Id.*

Our Supreme Court has instructed as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted). This Court does not step into the shoes of the trial court to revisit whether the verdict was against the evidence. Rather, our task is to "analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056. A new trial should only be awarded "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* at 1055.; *see Commonwealth v. Konias*, 136 A.3d 1014, 1022 (Pa. Super. 2016) (applying same standard to a bench trial).

The trial court offered the following analysis of Appellant's weight challenge.

> In this case, this court was the finder of fact, as it was a bench trial. Having heard the arguments made at trial by counsel, the verdict is not a shock to the conscience. The verdict was based solidly upon its interpretation of the evidence presented, viewing the documents, making credibility determinations, and finally considering the statements of [Appellant] both to police and on the phone from the Berks County Jail System.

Trial Court Opinion, 7/2/2020, at 7.

Upon review, we discern no abuse of discretion on the part of the trial court in concluding the verdict was not against the weight of the evidence. Appellant's argument largely focuses on his assertions regarding the admissibility of evidence instead of assessing its credibility or persuasive

nature, which implicate the weight of the evidence. Admissibility and weight are distinct issues. The trial court was within its discretion to weigh the entire body of evidence produced as it did. Accordingly, Appellant's challenge to the weight of the evidence merits no relief.

Based on the forgoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/01/2021